UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARRY PIPKIN,                                     Case No. 1:15-cv-775
       Petitioner,

                                   Black, J.
      vs.                                    Wehrman, M.J.

WARDEN, LONDON                                    **REPORT AND**
CORRECTIONAL INSTITUTION,                         **RECOMMENDATION**
       Respondent.

      Petitioner has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. (Doc. 4). This matter is before the Court on the petition, respondent's return of writ,

and petitioner's reply. (Docs. 4, 6, 17).

I.     **PROCEDURAL HISTORY**

      In January 2014, a Butler County, Ohio, jury convicted petitioner of one count each of

aggravated burglary, assault, and menacing. (Doc. 6-1, Exs. 6-7, at PageID 160-64). He was

sentenced on March 3, 2014, to a term of nine years of imprisonment, with credit granted for 229

days served. (*See id*., Ex. 10, at PageID 169-70). On March 26, 2014, the trial court issued an

amended judgment granting 237 days of jail time served. (*Id*., Ex. 11, at PageID 171-72).

Petitioner timely appealed. (*Id*., Exs. 12 & 13, at PageID 173, 176).

      On appeal, petitioner was represented by new counsel. (*Id*., Ex. 15, at PageID 183).

After appellate counsel filed an *Anders*[1] brief and a motion to withdraw (*id*., Exs. 17 & 18, at

PageID 185-208), petitioner *pro se* raised seven assignments of error. (*Id*., Ex. 20, at PageID

211-228). On March 2, 2015, the Twelfth District Court of Appeals then affirmed petitioner's

convictions and sentence, finding the appeal "wholly frivolous," and granted the motion to

---

[1]*See Anders v. California*, 386 U.S. 738 (1967)

withdraw.  (*Id*., Ex. 22, at PageID 251).  On June 3, 2015, the Ohio Supreme Court declined

further review.  (*Id*., Ex. 27, at PageID 285).

In the meantime, on April 2, 2014, petitioner filed a *pro se* post-conviction motion for

jail-time credit, which the trial court denied on April 7, 2014.  (*Id*., Exs. 28 & 29, at PageID 286-

89).  The Ohio Court of Appeals dismissed petitioner's appeal from the trial court's denial of his

post-conviction motion for jail-time credit (*id*., Ex. 31, at PageID 294), and petitioner did not

seek further review in the Ohio Supreme Court.  (*See* Doc. 6, at PageID 96).  On April 2, 2015,

petitioner filed a letter with the trial court regarding his aggravated burglary conviction and

sentence.  (*Id*., Ex. 32, at PageID 295-96).  The trial court did not respond to the letter.  On

February 9, 2016, petitioner filed a pro se motion "requesting the Voir Dire," which the trial

court denied.  (*Id*., Exs. 33 & 34, at PageID 299-300).  The on-line docket for the trial court does

not reveal that petitioner appealed the denial of this motion.[2]  Further, it appears that on June 20,

2016, petitioner filed in the trial court a motion for reconsideration, which the trial court denied

on June 30, 2016.  It also appears that petitioner has filed two additional letters with the trial

court, to which the trial court apparently has not responded.

In December 2015, petitioner commenced the instant habeas corpus action.  (*See* Doc. 1).

In his petition for habeas corpus relief (Doc. 4), petitioner asserts the following seven grounds

for relief:

> **GROUND FIRST**:  Petitioner's Conviction was against the manifest weight of the
> evidence.

> **Supporting Facts**:  The evidence at trial and the testimony given by Mrs. Brandy
> Keith shows that [petitioner] Cohabitated with Mrs. Keith.

---

[2]Although the record in this Court does not indicate whether petitioner appealed the denial of this motion, this Court may take judicial notice of court records that are available on-line to members of the public.  *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1990)).  The on-line trial-court docket in petitioner's underlying criminal case was viewed at the Butler County Clerk of Courts website under Case No. CR 2013 07 1140 at http://pa.butlercountyclerk.org/eservices/.

**GROUND SECOND**:  Trial Court abused it's [sic] discretion.

**Supporting Facts**:  The trial court abused it's [sic] discretion when it did not allow the jury to hear previous testimony given at the preliminary hearing by Mrs. Keith at trial.  The trial court failed to clarify an element about the Aggravated Burglary law.  The jury was confused about the element of the law that say[s] "WITH PURPOSE[.]"  The court referred them back to the jury instructions.

**GROUND THREE**:  Trial Counsel was Ineffective.

**Supporting Facts**:  Trial Counsel did not represent [petitioner] to the standards required by law.  Trial counsel did not subpoena Bank statements which would have show[n] [petitioner's] contribution to the household.  But questioned the victim about the checks at trial, I told him about.  Also he failed to properly [i]mpeach the state['s] witness.  He just gave up.  He also did not ask for the court to dismiss case when he knew that [petitioner's] ex-wife was allowed to work on [his] case as a Crime Victim Advocate[.].  Defense failed to object to the prosecution stating that [petitioner] had been charge[d] with Receiving Stolen property in 2011.  Defense counsel should have been aware of the [petitioner's] prior criminal History and should have not let the statement or question be asked by the Prosecution.  Did not challenge Jury Pool when [petitioner] made him aware that there was no African-Americans in the pool.

**GROUND FOURTH**:  The trial court failed to have any African Americans in Jury Pool.

**Supporting Facts**:  The [petitioner] should have at least had the opportunity to pick a[n] African American to be one of the jury members, but his jury pool had none, being that [petitioner's] jury consisted of Ten (10) white Americans, One (1) Asian American and One (1) American-Indian.  The [petitioner] felt the jury was swayed towards the State cause his crime was against a White American Female.

**GROUND FIFTH**:  Jury Instruction.

**Supporting Facts**:  There should have been a lesser charged offense given to the jury of Domestic Violence since the elements of Cohabitation did indeed exist, when the [petitioner] made the request to the trial court.  Also when the jury asked the trial court the following question about the Jury Instructions "Does the with purpose to commit a crime means Premeditated."  The trial court did not clarify but referred them back to the jury Instruction.  Clarification should have been given by the trial court.

**GROUND SIXTH**:  Refusal of Granting Crim. R. 29.

**Supporting Facts**:  Should have been granted by the court after the state rested.  The testimony given by Mrs. Keith at trial establishes Cohabitation between Mrs. Keith and [petitioner].  According to the Supreme Court of Ohio.  The Honorable

3

Court defines Cohabitation as follow: (1) Sharing of familial or Financial Responsibilities; (A) Shelter, (B) Provision for food, (C) Commingling Assets, (D) Provision for Utilities; (2) Consortium; (A) Mutual Respect, (B) Fidelity, (C) Affection (D) Society (E) Cooperation, (F) Solace, (G) Comfort (H) Aid to each other (I) Friendship, (J) Conjugal Relations: According to Mrs. Keith's testimony, . . . [t]he Cohabitation elements were clearly met and the charge of Aggravated Burglary should been dismissed and [petitioner] should have been found guilty of a lesser charge offense of Domestic Violence. Since [petitioner] had established the address of 4019 Bonita Drive, Middletown, Ohio, 45044 as his primary residence and no court order was given to [petitioner] refraining him to be in the residence neither was there an order refraining him to stay away from Mrs. Keith. [Petitioner] had every right to return to the residence on July 11th, 2013, and could not be a trespasser of said residence. As you can see from exhibit A, B, C, D, and E this is the address where [petitioner] was solely contacted for school and employment.

**GROUND SEVENTH:** Prosecution Misconduct.

**Supporting Facts:** The state informed the jury that [petitioner] was convicted of receiving stolen property in 2011. This was a false statement [petitioner] was not convicted of receiving Stolen Property in 2011.

(Doc. 4, at PageID 69-77).

Respondent opposes the petition, arguing that petitioner's claims are either non-cognizable on federal habeas review, procedurally defaulted, or fail on the merits. (Doc. 6). For the reasons below, the Court finds that the petition (Doc. 4) should be denied.

## II. FEDERAL HABEAS STANDARD

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claim that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

4

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court has further held that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of

review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 293 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 40 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412); *see also White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012) (internal citation and quotation marks omitted)) ("'[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions.'"). Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine

whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

## III. THE PETITION SHOULD BE DENIED.

### A. Ground One

In Ground One, petitioner argues that his conviction for aggravated burglary was against the manifest weight of the evidence because the evidence at trial established that he cohabitated with the victim, Brandy Keith, and therefore could not have trespassed in her residence as is required to support an aggravated-burglary conviction. (*See* Docs. 4, at PageID 69-70; 17, at PageID 748). Respondent urges the Court to dismiss Ground One as non-cognizable on federal habeas review. (Doc. 6, at PageID 99, 108-09).

A claim that a conviction is against the manifest weight of the evidence is not cognizable on federal habeas review. *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 678 N.E.2d 541, 546-48 (Ohio 1997). However, given petitioner's *pro se* status, this Court will liberally construe Ground One as a challenge to the sufficiency of the evidence supporting his aggravated-burglary conviction. *See Nash v. Eberlin*, 258 F. App'x 761, 764-465 (6th Cir. 2007) (explaining that a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency of the evidence).

The well-settled standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As the Supreme Court held in *Jackson*, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship*, 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher,* 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's

8

findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Because the Ohio Court of Appeals dismissed the entire appeal as "wholly frivolous," it did not provide an analysis of the sufficiency of the evidence supporting petitioner's conviction for aggravated burglary. However, even though there is no analysis of the evidence, the appellate court's decision must be treated as made on the merits. *Harrington v. Richter*, 526 U.S. 86, 103 (2011). For the reasons below, petitioner has not shown that the Ohio Court of Appeals' adjudication of the manifest-weight-of-the-evidence claim[3] was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 526 U.S. at 103.

Petitioner was convicted of aggravated burglary under the following statute:

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply

---

[3]In *Jackson, supra,* 2015 WL 4481517, at *16, the Court recognized that the state-law standard of review is "more stringent" given that a "finding that a conviction is supported by the weight of the evidence [under Ohio law] must necessarily include a finding of sufficiency."

. . . . The offender inflicts, or attempts or threatens to inflict physical harm on another.

Ohio Rev. Code § 2911.11(A)(1). As set forth above, petitioner contends that there was insufficient evidence to convict him of aggravated burglary because there was insufficient evidence to show that he trespassed in Keith's residence. (*See* Doc. 4, at PageID 69-70; Doc. 17, at PageID 748). Petitioner's argument is unpersuasive.

A criminal trespass occurs when a person "without privilege to do so . . . [k]nowingly enter[s] or remain[s] on the land or premises of another." Ohio Rev. Code § 2911.21(A)(1). Under Ohio law, "*any* person can indeed commit a trespass against property that belongs to, is controlled by, or is in the custody of, someone else." *State v. O'Neal*, 721 N.E.2d 73, 82 (Ohio 2000) (emphasis original). Further, "a privilege once granted may be revoked." *State v. Steffen*, 509 N.E.2d 383, 388 (Ohio 1987). An individual's privilege to remain is implicitly revoked when he commits an act of violence against a person who has the authority to revoke the privilege. *See id.* at 389. When viewed in the light most favorable to the prosecution, the State presented sufficient evidence to prove each element of aggravated burglary, including trespass.

The State presented evidence that Keith resided at 4019 Bonita Drive, in Middletown, Ohio, with her two children (Doc. 6-2, Ex. 41, at PageID 369; Ex. 42, at PageID 427); that petitioner, her fiancé of nine months, stayed there "[f]rom time to time" (Doc. 6-2, Ex. 42, at PageID 428), but resided at a different address on 17th Ave in Middletown, Ohio (*id.* at PageID 432-34); that Keith did not give petitioner a key to her residence (*id.* at PageID 431); and that petitioner's name was not on the lease to her residence (*id.* at PageID 431, 535). The State also presented evidence that, on July 10, 2013, the day before the aggravated burglary, Keith confronted petitioner about various items that were missing from her home and told him not to return. (*Id.* at PageID 435-37). Further, the State presented evidence that, in the early morning

hours of July 11, 2013, petitioner forced his way into Keith's residence, repeatedly hit her, threatened to kill her, held a pillow over her face, and injured her nose, eye, jaw, ear, and foot. (*Id*. at PageID 438-40, 444-46). When the police arrived at Keith's residence, petitioner was hiding in a closet. (Doc. 6-2, Ex. 41, at PageID 374-75). Additionally, when officer Christine Sorrell asked petitioner "where is his permanent address," he responded that "it was the 17th Avenue address." (*Id*. at PageID 385).

Petitioner's insufficient-evidence claim challenges the inferences the jury drew from the evidence presented at trial. Petitioner points to testimony from which he contends the jury could have found that he in fact lived with Keith and thus was not a trespasser at the time of the aggravated burglary.[4] (*See* Docs. 4, at PageID 70; 17, at PageID 746-51). Petitioner's argument, however, misunderstands the *Jackson* standard. As set forth above, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. This Court may not reweigh the evidence or substitute its opinions for the that of the trier of fact. *See id.* at 318-19 & n.13; *see also Fisher,* 648 F.3d at 450.

Based on the above evidence, the Ohio Court of Appeals reasonably determined that petitioner's conviction was supported by sufficient evidence. Accordingly, petitioner is not entitled to habeas relief on Ground One of the petition.

---

[4]To the extent that petitioner asserts in Ground One that the jurors lost their way because the trial court did not instruct them as to the elements of cohabitation (*see* Doc. 17, at PageID 748-49), this is a challenge to the manifest weight of the evidence, which is not cognizable on federal habeas review. *See Tibbs*, 457 U.S. at 41-47. Moreover, to the extent that petitioner is challenging the trial court's failure to instruct the jury on the lesser-included offense of domestic violence, the Court addresses this claim in its analysis of Ground Five of the petition.

### B. Ground Two

In Ground Two, petitioner asserts that the trial court abused its discretion when it:

(1) "did not allow the jury to hear previous testimony given at the preliminary hearing by Mrs. Keith at trial"; and (2) "failed to clarify an element about the Aggravated Burglary law." (Docs. 4, at PageID 71; 17, at PageID 751).

Petitioner has failed to raise a cognizable claim in the first sub-claim of Ground Two. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67–68, (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). In this case, petitioner challenged the trial court's ruling on direct appeal and before the Ohio Supreme Court based exclusively on Ohio state law principles. The sole case cited by petitioner in the state courts was "*State v. Kimble Miller*, 2010 Ohio 1722." (*See* Doc. 6-1, Ex. 20, at PageID 220; Ex. 25 at PageID 271).

In his traverse, petitioner argues that the alleged error violated his federal right to due process. (*See* Doc. 17, at PageID 753). However, petitioner has waived any claim of constitutional error because he failed to fairly present his constitutional claim to the state courts.[5] "Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006)

---

[5]Because petitioner could have raised a due process claim on direct appeal, but did not do so, *res judicata* now prohibits him from raising such a claim in any post-conviction proceeding. *See State v. Cole*, 443 N.E.2d 169, 171-72 (Ohio 1982). Petitioner's due process claim is therefore procedurally defaulted. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Moreover, petitioner has not demonstrated cause and prejudice or a miscarriage of justice such as would allow a review of this claim on federal habeas review. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).

(quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  Moreover, it is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature.  *McMeans,* 228 F.3d at 681.  Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Id.* (citing *Franklin*, 811 F.2d at 326).

In this case, petitioner failed to present his claim as a constitutional issue in the state courts.  Rather his argument on this issue in Ohio Court of Appeals and in his memorandum in support of jurisdiction in the Ohio Supreme Court was as follows:

> The Trial Court also abused it[s] discretion when it did not allow sworn testimony given under oath by the alleged victim to be heard by the jury.  The trial court also did not allow the testimony given under oath at the Preliminary Hearing to be used to impeach the states witness. . . .  The trial court was relying on (*State v.* [*Miller*, No. CA2009-04-106, 2010 WL 1534104 (Ohio App. Apr. 19, 2010)].  The witness material cited in this case was "nurse notes" not testimony given under oath.  The case law above reads.  "A party may not read aloud written material they wish to

> use to refresh recollection in front of the jury."  [T]here is a difference between written material and sworn testimony given under oath in a court of law.  The Appellant feels that this case law does not apply."

(Doc. 6-1, Ex. 20, at PageID 220; Ex. 25, at Page ID 271).  Petitioner did not rely on federal or state cases employing constitutional analysis, nor can the Court conclude that petitioner phrased his claim in terms of constitutional law or alleged facts well within the mainstream of constitutional law.  The evidentiary issue presented in *Miller*, the only case cited by petitioner in the Ohio courts, was whether the prosecutor's use of notes in that case to refresh a witness's recollection violated the Ohio Rules of Evidence.  *See Miller*, 2010 WL 1534104, at *2.  Accordingly, petitioner is not entitled to habeas relief based on the first sub-claim of Ground Two.

The second sub-claim presented in Ground Two fails on the merits.  Petitioner contends that the trial court erred in failing to properly clarify the jury instruction regarding aggravated burglary following two jury questions.  The jury submitted the following two questions:

> Number One, "Does, quote, with purpose to commit, quote, as stated in Number 5, page 9 have to be premeditated?"

> And Number Two, "Does someone who commits the offense of assault when they are trespassing, is that aggravated burglary whether it is premeditated or not?"

(Doc. 6-2, Ex. 43, at PageID 669).  The trial court answered question number one as follows: "You must consider the jury instructions in their entirety.  You may consider the definition[s] provided to you on Pages 6 through 9 if they relate to the charge of aggravated burglary."  (*Id.* at PageID 669-71).  With regard to question number two, the trial court stated:  "You must consider the jury instructions in their entirety.  You are the trier of fact and must apply the law regarding aggravated burglary as provided on Page 6 to 9 to the evidence."  (*Id.*).  Petitioner contends that the trial court "highly prejudiced" him by referring the jury back to the instructions without additional clarification.  (Doc. 17, at PageID 753).

14

It is well-settled under Supreme Court precedent that errors in jury instructions in a state criminal trial generally are not reviewable in a federal habeas corpus proceeding unless they deprived the petitioner of a fundamentally fair trial and due process of law. *See Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *see also Estelle,* 502 U.S. at 72. Before a federal court may overturn a state conviction based on an error in the jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146 (1973).

Therefore, the question on federal habeas review of a state conviction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147); *see also Henderson,* 431 U.S. at 154. The Supreme Court has clearly established that in answering this question, the instruction must "not be judged in artificial isolation," but rather must be considered in the context of the instructions as a whole and the trial record. *Cupp,* 414 U.S. at 146-47; *see also Estelle,* 502 U.S. at 72. In addition, if the challenged instruction is ambiguous, the inquiry turns on whether a reasonable likelihood exists that the jury applied the instruction in a way that violates the Constitution. *Estelle,* 502 U.S. at 72 (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990)).

The trial court instructed the jury as follows as to the aggravated-burglary charge:

Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 10th day of July, 2013 in Butler County, Ohio the Defendant with purpose to commit the offense of assault and or menacing trespassed by force, stealth, or deception in an occupied structure or a separately secured or separately occupied portion of an occupied structure when another person other than an accomplice of the Defendant was present in that structure and the Defendant inflicted or attempted to inflict physical harm on that person. A person acts purposely when it is his specific intention to cause a certain result. It must be

15

established in this case that at the time in question it was present in the mind of the
Defendant a specific intention to commit the offense of assault and/or menacing.

(Doc. 6-1, Ex. 43, at PageID 656; *see also* PageID 659 (restating the elements of aggravated

burglary). The trial court then went on to instruct the jury on the elements of assault and

menacing and to define the terms trespass, force, deception, occupied structure, and physical

harm. (*Id*. at PageID 656-59, 660-61).

The aggravated-burglary instruction in this case tracked the Ohio Jury Instructions'

proposed language on aggravated burglary. *See* 2 Ohio Jury Instructions 511.11 (2018). Further,

petitioner has not indicated what further clarification the trial court should have provided in

response to the jury's questions. Although under Ohio law a defendant may form the purpose to

commit a criminal offense at any point during the course of a trespass, *see State v. Fontes*, 721

N.E.2d 1037, 1040 (Ohio 2000), defense counsel objected when the State requested such a

clarification. (*See* Doc. 6-2, Ex. 44, at PageID 677-683). Further, the State argued in closing

argument that petitioner had formed the purpose of committing assault and/or menacing at the

time he trespassed in Keith's residence. (*See* Doc. 6-2, Ex. 43, at PageID 623). Petitioner has

failed to establish that by referring the jury back to the original instruction the trial court erred,

let alone rendered the trial fundamentally unfair. *See, e.g. Little v. Brunsman*, No. 1:12-cv-145,

2014 WL 4354547, at *7 (N.D. Ohio Sept. 2, 2014) (rejecting habeas claim where trial court

referred the jury to instructions that correctly stated the law).

Ground Two thus is without merit.

**C.    Ground Three**

In Ground Three, petitioner contends that trial counsel performed ineffectively in various

instances. Specifically, petitioner asserts that trial counsel failed to: (1) subpoena bank records

that would have shown petitioner's contribution to the household; (2) properly impeach a State

witness; (3) ask for the trial court to dismiss the case because petitioner's ex-wife worked on the case as a Crime Victim Advocate; (4) object to the prosecutor misstating petitioner's criminal history; and (5) challenge the jury pool[6] on the ground that there were no African Americans in venire. (Docs. 4, at PageID 72-73; 17 at PageID 754-56). Respondent contends that petitioner has procedurally defaulted the third ineffective-assistance-of-counsel sub-claim by presenting it to the state courts under a different legal theory and that the remainder of the claim fails on the merits. Respondent contends, in the alternative, that the third sub-claim also fails on the merits. (Doc. 6, at PageID 100, 103-05, 111-19).

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). Counsel is "strongly presumed" to have "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The Court will address the procedural-default issue first. The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the *same theory* in which it is later presented in federal court." *Wong*, 142 F.3d at 322 (emphasis added). A new claim that is related to but distinct from a claim that was presented in the state courts is nonetheless defaulted. *Lott v. Coyle*, 261 F.3d 594, 607 (6th Cir. 2001). In the state courts, petitioner raised his third sub-claim under the theory that counsel performed ineffectively by

---

[6]Petitioner states that counsel was ineffective for failing to challenge the absence of African Americans from the jury *pool*. However, the Court understands petitioner's argument in Grounds Three and Four to be that there were no African Americans in the jury *venire* from which his jury panel was selected. Petitioner has presented no evidence as to the racial make-up of the *pool* of jurors from which his venire was selected. *See* Ohio Rev. Code § 2313.06 (permitting commissioner of jurors to compile a county's annual list of jurors from either the list of registered voters or the lists of registered voters and licensed drivers).

failing to bring to the court's attention that petitioner's ex-wife worked as a victim's advocate in this case. (*See* Doc. 6-1, Ex. 20, at PageID 221; Ex. 25, at PageID 272). He did not argue, as he does in his habeas petition, that counsel should have sought a dismissal of the charges against petitioner on this basis. Because Ground Three's third sub-claim arises out of the record of proceedings in the trial court, petitioner could have raised it on direct appeal. Under Ohio law, *res judicata* now prohibits him from raising this ineffective-assistance sub-claim in any post-conviction proceeding. *See Cole*, 443 N.E.2d at 171-72. There being no state-court remedy still available to petitioner with respect to this sub-claim, respondent's argument that petitioner procedurally defaulted this sub-claim is well-taken. *See Wong*, 142 F.3d at 322.

Having procedurally defaulted this sub-claim, petitioner may now obtain review of the sub-claim by this Court only by showing either cause and prejudice or a miscarriage of justice. *Murray,* 477 U.S. at 488-89. Petitioner has not established that he could not have raised his third sub-claim under the theory presented in his habeas petition in the state courts. Nor can he overcome the procedural default of this sub-claim by demonstrating that failure to consider the claim will result in a miscarriage of justice because has not provided any new evidence of his actual innocence. *See Murray*, 477 U.S. at 496; *see also Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). Accordingly, petitioner's third sub-claim is barred from habeas review.[7]

---

[7] In any event, petitioner's third sub-claim lacks merit. Petitioner does not articulate how his ex-wife serving as a victim's advocate for Keith would have supported a motion to dismiss the charges against him. To the extent that petitioner suggests his ex-wife's role as a victim's advocate somehow renders suspect Keith's credibility, Keith acknowledged during her direct examination that petitioner's ex-wife was one of her victim advocates. (Doc. 6-2, Ex. 42, at PageID 480). She also denied during her direct examination that she was using the underlying criminal proceedings "to get back at [petitioner]." (*See id*. at PageID 482). It is the jury's role to assess a witness's credibility. *See Jackson*, 443 U.S. at 326.

Nor is petitioner entitled to relief on the remainder of Ground Three.  As for the first sub-claim, petitioner asserts that counsel should have introduced bank records showing that he deposited money into Keith's account.  Petitioner contends that this would have demonstrated that "he had helped out with more than just food expenses but also rent, utilities and household goods."  (Doc. 17, at PageID 754).  Keith testified that although petitioner contributed to food expenses, he did not contribute to rent.  (Doc. 6-2, at PageID 431, 491-92).  Petitioner contends that the bank records would have supported his defense that he lived with Keith and was not trespassing as required for an aggravated-burglary conviction.

"Decisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense."  *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2003); *see also Cathon v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2002) ("[U]nder Strickland, we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy").

Petitioner has not shown that counsel's failure to present bank records deprived him of a substantial defense.  As an initial matter, petitioner does not state what the bank records would have shown, other than generally stating that they would have shown that he deposited money into Keith's bank account prior to the aggravated burglary.  (*See* Docs. 4, at PageID 72; 17, at PageID 754).  Petitioner does not state how much money he deposited into Keith's account or how often he did so.  Moreover, counsel called several defenses witnesses, including petitioner's sister-in-law (Doc. 6-2, Ex. 42, at PageID 540-41), petitioner's son (*id.* at PageID 543-44), petitioner's mother (*id.* at PageID 553); and petitioner himself (*id.* at PageID 567-68) to testify that petitioner lived with Keith.  Indeed, petitioner himself testified on direct examination that he

contributed his earnings to Keith.  (*See* Doc. 6-2, Ex. 42, at PageID 567-68).  In view of the witness testimony counsel presented supporting petitioner's cohabitation defense, the submission of bank records would have been at most cumulative.  The omission of cumulative evidence will not support an ineffective-assistance-of-trial-counsel claim.  *See United States v. Schaflander*, 743 F.2d 714, 718 (9th Cir. 1984).[8]

As for the second sub-claim, petitioner asserts that counsel failed to effectively impeach Keith with her testimony from the preliminary hearing regarding the number of prescription pills that she stated petitioner had stolen from her.  (*See* Doc. 17, at PageID 755).  When counsel attempted to impeach Keith on this issue (*See* Doc. 6-2, at PageID 504-08), Keith indicated that she did not understand counsel's questions (*see* Doc. 6-2, at PageID 505, 508).  Given Keith's stated confusion, counsel could have reasonably decided that Keith simply did not understand the question being asked and was not intentionally misstating prior testimony.  Counsel thus could have reasonably decided that any further attempt at impeachment would not have been effective.  Further, as respondent asserts, petitioner has not shown that Keith's testimony as to the number of prescription pills that she stated petitioner had stolen from her was central to his defense.  (*See* Doc. 6, at PageID 115).  Counsel generally is not ineffective for failing to impeach a witness regarding minor inconsistencies in the witness's testimony.  *See Sowell v. Anderson*, 663 F.3d 783, 801 (6th Cir. 2011).

As for petitioner's fourth sub-claim, petitioner contends that counsel should have

---

[8]Moreover, even assuming for the sake of argument that counsel should have presented bank records to establish that petitioner had deposited money into Keith's bank account prior to the aggravated burglary, petitioner cannot demonstrate any prejudice from counsel's failure to do so.  *See Strickland*, 466 U.S. at 687-88, 694.  As set forth above, an individual's privilege to remain is implicitly revoked when he commits an act of violence against a person who has the authority to revoke the privilege.  *See Steffen*, 509 N.E.2d at 389.  Even if the jury could have found the purported bank records to constitute some evidence that petitioner lived with Keith, the jury also could have found that any privilege petitioner had to be in Keith's residence was revoked when petitioner entered Keith's residence by force and hit her.

objected when the prosecutor misstated petitioner's criminal history.  The prosecutor asked petitioner if he was convicted of receiving stolen property in 2011, and petitioner answered that he was.  (*See* Doc. 6-2, Ex. 42, at PageID 588).  It appears from petitioner's state-court appellate brief that he was actually convicted of receiving stolen property in 2012.  (*See* Ex. 20, at PageID 225).  Petitioner has failed to show that counsel performed ineffectively by failing to object to the prosecutor's mistake regarding the year of petitioner's conviction for receiving stolen property.  Counsel reasonably could have determined that an objection simply would have highlighted the prior conviction.

As for the fifth sub-claim, petitioner has not shown that counsel was ineffective in failing to object to the jury venire at his trial.  "[A] defendant has no right to a 'petit jury composed in whole or in part of persons of [petitioner's] own race,'" only "the right to be tried by a jury whose members are selected by nondiscriminatory criteria."  *Powers v. Ohio*, 499 U.S. 400, 404 (1991) (quoting *Strauder v. West Virginia*, 100 U.S. 303, 305 (1880)).  As discussed below in Ground Four, petitioner has not shown that his jury venire violated the Constitution and, thus, has not shown that an objection by counsel to the jury venire at his trial was warranted or would have succeeded.  Petitioner therefore has not shown either deficient performance or prejudice as is necessary to prevail on an ineffective-assistance claim.  *See Strickland*, 466 U.S. at 697.

Ground Three does not warrant habeas relief.

**D.    Ground Four**

In Ground Four, petitioner asserts that "[t]he trial court failed to have any African Americans in Jury Pool" in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.  (*See* Docs. 4, at PageID 73-74; 17, at PageID 757-59).  For the reasons below, Ground Four does not warrant habeas relief.

"A defendant challenging a venire on equal protection grounds bears the burden of

21

showing that the venire was selected in an intentionally discriminatory manner." *United States v. Allen*, 160 F.3d 1096, 1104 (6th Cir. 1998) (citing *Batson v. Kentucky*, 476 U.S. 79, 93 (1986)). "[A] defendant may establish a *prima facie* case of such discrimination by making one of two showings: (1) that the defendant's race was substantially underrepresented on the particular venire from which the defendant's jury was selected AND that the venire was selected under a practice providing an opportunity for discrimination; or (2) that there has been systematic, long-term underrepresentation of defendant's race on jury venires." *Id*. at 1105 (emphasis original).

As for petitioner's Sixth Amendment claim, "[t]he Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)). In order to establish a *prima facie* violation of the Sixth Amendment's fair-cross-section requirement, the defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id*. (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). To establish "systematic exclusion" under the third prong of the test, the defendant must show that the underrepresentation of a distinctive group in the community is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366; *see also United States v. Suggs*, 531 F. App'x 609, 619 (6th Cir. 2013). Significantly, systematic exclusion cannot be inferred "[m]erely because the percentage of a distinctive group selected in a single venire does not mirror the percentage of the group in the entire community." *United States v. Smith*, 463 F. App'x 564, 571 (6th Cir. 2012) (citing *Allen*, 160 F.3d at 1103, and *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988)). Once a defendant establishes a *prima facie* case,

the inquiry does not end because the burden then shifts to the government, which has the opportunity to justify the infringement "by showing attainment of a fair cross section to be incompatible with a significant state interest."  *See Duren*, 439 U.S. at 368; *Suggs*, 531 F. App'x at 619.

In support of his equal protection and Sixth Amendment claims, petitioner argues that the representation of African Americans in his jury venire was not fair and reasonable in relation to the representation of African Americans in the community.  As evidence, petitioner contends that African Americans make up 8.1% of the population in Butler County but that no African Americans were on his jury venire.  (Doc. 17, at PageID 757, 774).  He also asserts that there are more African Americans in the Butler County community than there are Asian Americans and Indian Americans but that there was one Asian American and one Indian American on his jury panel.  (Docs. 4, at PageID 74; 17, at PageID 757-58, 774).  Petitioner claims the other ten members of his jury panel were Caucasian.  (*See id*.).  However, as noted above in note seven, petitioner has not presented evidence that African Americans were substantially underrepresented in the jury pool from which his venire panel was chosen or that the venire was selected under a practice providing an opportunity for discrimination or a systematic, long-term under-representation of African Americans on jury venires.[9]  *See Allen*, 160 F.3d at 1103-05. Likewise, petitioner has not presented any evidence that African Americans were "systematically

---

[9]On March 27, 2017, the Court ordered respondent to produce the "voir dire transcripts, preliminary hearing transcripts, and the jury venire" within thirty days of the date of the Order.  (Doc. 19, at PageID 801).  On April 27, 2017, respondent filed a supplemental state court record, containing the preliminary hearing transcript (Doc. 20-1), the trial court's request for a jury, the completed jury verdict form, and a "voucher list" showing the names of the members of the jury pool (Doc. 20-2), and the jury voir dire transcript (Doc. 20-3).  Petitioner asserted that respondent's production was incomplete because it did not include the nationalities or races of the potential jurors. (See Doc. 21, at PageID 976).  Petitioner requested that the Court order respondent to produce a video of the trial proceedings and to compile information about the races of the members of the jury pool from jury summons forms, registered-voter information, or Department of Motor Vehicle information.  (*See* Doc. 24, at PageID 988-89).  The Court denied the motion.  Petitioner has failed to establish how the requested information would have advanced his equal protection or Sixth Amendment claims.

excluded" from the jury panel.  *See id.* at 1104.  It was therefore reasonable for the Ohio Court of Appeals to find no merit to petitioner's equal-protection and Sixth Amendment claims.

### E.  Ground Five

In Ground Five, petitioner argues that the trial court erred in failing to instruct the jury on the lesser included offense of domestic violence.  He also reasserts his second sub-claim from Ground Two.  (Docs. 4, at PageID 74-75; 17, at PageID 759-65).

Due Process does not require giving a lesser-included-offense instruction in non-capital cases, such as this one.  *See Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990).  The first sub-claim in Ground Five therefore does not warrant habeas relief.  For the reasons set forth above in addressing Ground Two, the second sub-claim in Ground Five also does not warrant habeas relief.

### F.  Ground Six

In Ground Six, petitioner argues that the trial court erred in denying his motion for acquittal under Ohio Criminal Rule 29.  (Docs. 4, at PageID 75-76; 17, at PageID 765-66).  Rule 29 permits a trial court to grant acquittal if the evidence is insufficient to prove each element beyond a reasonable doubt.  *See* Ohio. Crim. Rule 29(A).  This ground for relief essentially sets forth the same constitutional question as is raised under Ground One regarding the sufficiency of the evidence supporting petitioner's conviction for aggravated burglary.  As set forth above in addressing Ground One, petitioner's conviction for aggravated burglary is supported by sufficient evidence.  Ground Six does not warrant habeas relief.

### G.  Ground Seven

In Ground Seven, petitioner asserts that the prosecutor engaged in misconduct by misrepresenting his criminal history to the jury.  He also argues for the first time in his traverse

that the prosecution misstated his son's testimony regarding the number of times he stayed with petitioner at Keith's home in closing argument. (Docs. 4 at PageID at 77; 17 at PageID 766-67).

The scope of federal habeas corpus review of petitioner's prosecutorial misconduct claims is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974). Although a court confronted with such a claim must first determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986). Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden,* 477 U.S. at 181. The reviewing court's focus on a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith,* 455 U.S. at 219. A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985). "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997)).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court then determines if the statements were flagrant. *Id.* The Court considers four factors in determining flagrancy: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); *Macias*, 291 F.3d at 452. *See also Darden*, 477 U.S. at 182; *Young*, 470 U.S. at 12; *Donnelly*, 416 U.S. at 646-647. Other relevant factors include whether the prosecutor manipulated or misstated the evidence, *see Darden*, 477 U.S. at 182; *Berger v. United States*, 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960), or whether a curative instruction was given by the trial judge, *see Darden*, 477 U.S. at 182.

In the instant case, as stated above in addressing petitioner's ineffective-assistance-of-counsel claim, the prosecutor asked petitioner if he was convicted of receiving stolen property in 2011 and petitioner answered that he was. (Doc. 6-2, Ex. 42, at PageID 588). Petitioner was apparently convicted of receiving stolen property in 2012. (*See* Ex. 20, at PageID 225). Petitioner has failed to show that the prosecutor's mistake regarding the year of his conviction for receiving stolen property affected the fundamental fairness of the trial. Moreover, petitioner was being questioned regarding his own criminal history and had the opportunity to correct the prosecutor, but did not do so. As to the alleged misstatement of his son's testimony during closing argument, petitioner did not raise this claim in the state courts (*see* Doc. 6-1, Ex. 20, at PageID 225-26; Ex. 25, at PageID 276) and may not do so for the first time on federal habeas

26

review.  *See supra* note 5.  In any event, petitioner has not shown that the prosecutor's alleged misstatement of his son's testimony denied him a fair trial.  The jury itself heard petitioner's son testify as to the number of times he stayed with petitioner at Keith's house, and the trial court instructed the jury that closing argument was not evidence.  (*See* Doc. 6-2, Ex. 43, at PageID 620).  Ground Seven does not warrant habeas relief.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to habeas relief.  Having found that Grounds One through Seven are either without merit, procedurally defaulted, or not cognizable on federal habeas review, the petition (Doc. 4) should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[10]  In addition, a certificate of appealability should not issue with respect to the claims addressed on the merits herein in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack*, 529

---

[10]Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief.  *See Slack*, 529 U.S. at 484.

U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C.

§ 2253(c); Fed. R. App. P. 22(b).

  3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,*

the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting

this Report and Recommendation would not be taken in "good faith," and therefore **DENY**

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


        *s/ J. Gregory Wehrman*
        J. Gregory Wehrman
        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BARRY PIPKIN,                                    Case No. 1:15-cv-775
            Petitioner,

                                                 Black, J.
      vs.                                        Wehrman, M.J.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
            Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).